Kimberly M. Ingram-Hogan (State Bar No. 305497)
BRADLEY ARANT BOULT CUMMINGS LLP
ONE 22 ONE, 1221 Broadway, Ste 2400
Nashville, TN 37203
Phone: (615) 252-3592
kingram@bradley.com

*Attorney for Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

BEVERLY DANTZLER, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a PHH Mortgage Services,

Defendant.

Case No. 2:23-cv-10562-MRA

**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Judge: Hon. Mónica Ramírez Almadani
Hearing Date: June 27, 2024
Hearing Time: 1:30 p.m.
Courtroom: 10B

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 27, 2024, at 1:30 p.m., or such other date and time as the Court prefers, before the Honorable Mónica Ramírez Almadani, 350 W. 1st Street, Courtroom 10B, 10th Floor, Los Angeles, California 90012, PHH Mortgage Corporation, d/b/a PHH Mortgage Services ("PHH") will, and hereby does, move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Beverly Dantzler's ("Plaintiff") Amended Complaint on the ground that the complaint fails to state a claim upon which relief can be granted.

Specifically, the notice of default (the "Notice") that PHH sent Plaintiff cannot be reasonably understood to threaten immediate acceleration and foreclosure. Plaintiff's claims under the Fair Debt Collection Practices Act ("FDCPA") and under California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act") rely entirely on that misreading of the Notice's plain, unambiguous terms and fail for that reason. Likewise, Plaintiff's claim of negligent misrepresentation fails because she has not alleged a misrepresentation nor justifiable reliance.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, all other pleadings and papers on file herein, and such argument and evidence as may be presented to the Court.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 19, 2024.

DATED: March 26, 2024 Respectfully submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

By: */s/ Kimberly M. Ingram-Hogan*
Kimberly M. Ingram-Hogan

*Attorney for Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
III. LEGAL STANDARD ..... 5
IV. ARGUMENT ..... 6
A. Plaintiff has not plausibly alleged an FDCPA claim. ..... 7
1. The Notice did not violate Section 1692e. ..... 7
i. Section 1692e(5) ..... 8
ii. Section 1692e(10) ..... 12
2. The Notice did not violate Section 1692f. ..... 13
B. Plaintiff has not plausibly alleged a Rosenthal Act claim. ..... 15
C. Plaintiff has not plausibly alleged a negligent misrepresentation claim. ..... 15
V. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 5, 6

*Avila v. Riexinger & Assocs., LLC*,
2015 WL 1731542 (E.D.N.Y. Apr. 14, 2015), *aff'd in relevant part by* 644 F. App'x 19 (2d Cir. 2016) ... 10

*Bang v. Pioneer Credit Recovery, Inc.*,
2020 WL 3213793 (C.D. Cal. Apr. 1, 2020) ... 11

*Becker v. Genesis Fin. Servs.*,
2007 WL 4190473 (E.D. Wash. Nov. 21, 2007) ... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ... 6

*Carman v. CBE Grp., Inc.*,
782 F. Supp. 2d 1223 (D. Kan. 2011) ... 14

*Castro v. Green Tree Servicing LLC*,
959 F. Supp. 2d 698 (S.D.N.Y. 2013) ... 10

*Clomon v. Jackson*,
988 F.2d 1314 (2d Cir. 1993) ... 7

*Davis v. Midland Credit Mgmt., Inc.*,
2016 WL 7117185 (D. Kan. Dec. 7, 2016) ... 14

*Durning v. First Boston Corp.*,
815 F.2d 1265 (9th Cir. 1987) ... 4

*Fox v. Pollack*,
*181 Cal. App. 3d 954 (Cal. Ct. App. 1986)* ... 16

*Hami v. Portfolio Recovery Assocs., LLC*,
2015 WL 897571 (C.D. Cal. Feb. 23, 2015) ... 8

*Jenkins v. Union Corp.*,
999 F. Supp. 1120 (N.D. Ill. 1998) ... 8

*Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766 (E.D.N.C. 2011) ....................14

*Jones v. Synergetic Commc'n, Inc.*, 2018 WL 6062414 (S.D. Cal. Nov. 20, 2018)....................8

*Knowles v. Credit Bureau of Rochester*, 1992 WL 131107 (W.D.N.Y. May 28, 1992)....................10

*Koepplinger v. Seterus, Inc.*, 2020 WL 2063416 (M.D.N.C. Apr. 29, 2020) ....................11, 12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ....................2

*Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013) ....................14

*Loomis v. Leading Edge Recovery Sol.'s, LLC*, 2011 WL 13227853 (C.D. Cal. Jan. 28, 2011) ....................9, 13, 15

*Madonna v. Academy Collection Serv., Inc.*, 1997 WL 530101 (D. Conn. Aug 12, 1997) ....................10

*Madura v. Lakebridge Condominium Ass'n Inc.*, 382 F. App'x 862 (11th Cir. 2010) ....................9

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ....................6

*Mccafferty v. Schwartzkopf Law Office*, 2011 WL 529967 (E.D. Mo. Feb. 8, 2011) ....................10

*Mikhael v. Credit Corp. Sol.'s Inc.*, 2021 WL 2434325, at *5 (E.D.N.Y. June 15, 2021) ....................11

*Miller v. Trident Asset Mgmt., LLC*, 2019 WL 4467036 (D. Md. Sept. 18, 2019) ....................14

*Nichols v. Frederick J. Hanna & Assocs., PC*, 760 F. Supp. 2d 275 (N.D.N.Y. 2011) ....................8, 9

*Parkinson v. Robanda Int'l, Inc.*, 641 F. App'x 745 (9th Cir. 2016) ....................4

*Phillips v. Archstone Simi Valley LLC*, 2017 WL 11683752 (C.D. Cal. Jan. 31, 2017) .......... 8, 15

*Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22 (2d Cir. 1989) .......... 9, 10

*Quicho v. Mann Bracken, LLC*, 2007 WL 2782971 (N.D. Cal. Sept. 25, 2007) .......... 8

*Rosenau v. Unifund Corp.*, 539 F.3d 218 (3d Cir. 2008) .......... 12

*Schwarm v. Craighead*, 552 F. Supp. 2d 1056 (E.D. Cal. 2008) .......... 8

*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) .......... 6

*Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) .......... 7

*Turner v. Pro. Recovery Servs., Inc.*, 956 F. Supp. 2d 573 (D.N.J. 2013) .......... 14

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 4

*Velez v. Healthcare Revenue Recovery Grp., LLC*, 2017 WL 1476144 (M.D.N.C. Apr. 24, 2017) .......... 14

**Statutes**

15 U.S.C. § 1692e .......... *passim*

15 U.S.C. § 1692f .......... 13, 14

Cal. Civ. Code § 1788 *et seq* .......... 2, 5

Cal. Civ. Code § 1788.13 .......... 15

Cal. Civ. Code § 1788.17 .......... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In this action, Plaintiff attempts to recharacterize a run-of-the-mill notice of default letter—which tracks verbatim the requirements of Plaintiff's loan documents—as a deceitful intimidation tactic. According to Plaintiff, after she'd fallen fifty days behind on her monthly payment obligations, PHH sent her a notice of default, which she calls a "Final Letter." Plaintiff claims this "Final Letter" represented that PHH planned to *immediately* accelerate Plaintiff's indebtedness and foreclose on her loan if she did not cure her default by the stated deadline (35 days later, when Plaintiff would be 85 days delinquent). Plaintiff contends this representation was false because PHH had neither the intent nor the legal right to foreclose on her loan until she became 120 days delinquent (or 35 more days after the letter's deadline). And because of this allegedly false threat of immediate acceleration and foreclosure, Plaintiff claims she experienced anxiety, fear, and mental anguish and ultimately paid off her outstanding balance before she otherwise would have.

The fundamental problem with Plaintiff's theory, however, is that PHH's notice of default cannot reasonably be read to have threatened immediate acceleration and foreclosure. While Plaintiff repeatedly characterizes the notice as a "Final Letter," the notice does not use that phrase or anything like it; indeed, the word "final" shows up nowhere in the document. And while Plaintiff claims the notice represented that her "failure to ***immediately*** make a ***full and complete*** payment of all arrearages ***will*** result in acceleration" and foreclosure, the notice actually says no such thing. Instead, the notice informed plaintiff that her failure to cure her default "***may result*** in acceleration of the sum secured by the Security Instrument and sale of the Property." Not only is such conditional language inherently unthreatening, it is a contractual obligation. Plaintiff's Deed of Trust *requires* PHH to use this precise language when Plaintiff is in default—something

wholly omitted from Plaintiff's Amended Complaint. Perhaps most importantly, Plaintiff completely ignores other aspects of the Notice that signal that foreclosure was not, in fact, right around the corner, including an explanation of how Plaintiff's loan could be reinstated after acceleration and an invitation for Plaintiff to reach out to PHH "to discuss alternatives that might be available" should Plaintiff be unable to cure her default.

At bottom, taken in its entirety and in context with Plaintiff's Deed of Trust, the notice of default simply cannot be reasonably understood to have threatened immediate acceleration and foreclosure. And because that unreasonable and implausible allegation forms the linchpin of the *entire* Amended Complaint, all of Plaintiff's claims must be dismissed. Her claims under the FDCPA, 15 U.S.C. § 1692, *et seq*., fail because even the "least sophisticated debtor" could not reasonably understand this notice as threatening immediate acceleration and foreclosure. Her claims under the Rosenthal Act, Cal. Civ. Code § 1788, *et seq*., fail for that same reason. And her claim of negligent misrepresentation fails because she has not alleged either a misrepresentation or justifiable reliance.

Accordingly, the Court should dismiss the entire Amended Complaint with prejudice.

## II. FACTUAL BACKGROUND

Plaintiff alleges that PHH serviced a loan secured by a deed of trust on her property located in Inglewood, California. Am. Compl. ¶¶ 17–18 (Doc. 16). The terms of the loan and the associated security interest are governed by a Note and Deed of Trust that Plaintiff executed on June 27, 2005. Declaration of Gina Feezer ("Feezer Decl."), Exs. A (Note) and B (Deed of Trust).[1] Plaintiff alleges that PHH

[1] Plaintiff's claims are based on communications that PHH allegedly sent in connection with its role as the servicer of Plaintiff's loan, which is governed by the Note and Deed of Trust. As such, those documents are incorporated by reference in the Complaint and the Court can consider them in evaluating this Motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (documents not physically attached to the complaint may be considered if their "authenticity . . . is not

is her loan servicer and that when PHH became her servicer, she was in default of her payment obligations. Am. Compl. ¶ 18; *see also* Feezer Decl., Ex. C (Notice of Service Transfer).

In December 2022, Plaintiff received a letter from PHH providing notice that her loan was in default and seeking payment of past due amounts (hereinafter, the "Notice"). *Id.* ¶ 25 & Ex. A. Although Plaintiff repeatedly refers to the letter as a "Final Letter," the Notice itself is not identified as such, and the word "final" appears nowhere in the document. Instead, on its face, the letter is identified simply as a "Notice of Default."

As set forth in the Notice, Plaintiff had missed two monthly payments, the first due on November 1, 2022, and the second on December 1, 2022, totaling $4,644.40. *Id.*, Ex. A at 2 (Doc. 16-1 at 5). There is no dispute that under the contractual terms of Plaintiff's Deed of Trust and Note, Plaintiff was in default. The Notice provided the total that Plaintiff had to pay the cure the default, including late fees and other charges, as well as a due date for the payment ("01/24/2023"), which was approximately 35 days after the Notice was sent and 85 days after the November 1 deadline for Plaintiff's earliest outstanding monthly payment. *Id.*

According to the Complaint, the Notice contained a "false ultimatum": that Plaintiff's "failure to ***immediately*** make a ***full and complete*** payment of all arrearages ***will result*** in acceleration of [her] loan." Am. Compl. ¶ 2 (second emphasis in original; first and third supplied). The Notice, however, did not actually state that the failure to immediately cure Plaintiff's default "***will result***" in acceleration or foreclosure. To the contrary, as Plaintiff's Complaint later concedes, the Notice stated only that the "[f]ailure to cure the default on or before the date specified in the notice ***may result in acceleration*** of the sum secured by the Security Instrument and sale of the Property" (*id.* ¶ 28 (citing *id.*, Ex. A at 2 (Doc. 16-1 at 5)

contested" and the "complaint necessarily relies on them" (internal quotation omitted)).

(emphasis in original))).[2] Nowhere in the Notice did PHH say that acceleration or foreclosure ***would*** occur, nor did the Notice provide a timetable in which acceleration or foreclosure could occur. Thus, the Notice itself does not say that acceleration or foreclosure will occur any earlier than legally allowed.

Notably, by disclosing that Plaintiff's failure to cure her default "may result" in eventual acceleration of Plaintiff's indebtedness and sale of her property, the Notice precisely conformed to the requirements of Plaintiff's Deed of Trust. As set forth in Paragraph 22 of that document, before Plaintiff's indebtedness could be accelerated, she would be provided with a notice "specify[ing] … that failure to cure the Default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." Deed of Trust ¶ 22. Likewise, in her Note, Plaintiff agreed that "[i]f I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me." Note ¶ 7(C).

The Notice also described potential consequences that could result should Plaintiff fail to cure her default and should PHH (eventually) choose to accelerate her debt and initiate foreclosure, including the incurrence of expenses, attorneys' fees, and other costs. Am. Compl. ¶ 27, Ex. A at 2 (Doc. 16-1 at 5). Yet, the Notice

[2] The Court may consider the content of the Notice because it is attached as an exhibit to the Complaint and is integral to Plaintiff's claims, *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987), and the Court need not credit allegations inconsistent with the Notice, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Parkinson v. Robanda Int'l, Inc.*, 641 F. App'x 745, 748 (9th Cir. 2016) (Smith, J., concurring in part) ("[T]he inconsistencies in the transactional documents attached to the complaint are legion, and the district court did not abuse its discretion in determining that no manner of amendment could cure such deficiencies.").

also explained that Plaintiff had the right to reinstate her loan after acceleration—and stop any applicable foreclosure proceedings—by paying the overdue amount. *Id*., Ex. A at 2 (Doc. 16-1 at 5). In addition, PHH also invited further discussion should Plaintiff be unable to bring her account current:

> If the mortgage account cannot be brought current, we should be contacted immediately to discuss possible alternatives to foreclosure. We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current.

*Id*., Ex. A at 3 (Doc. 16-1 at 6).

Plaintiff alleges that the Notice caused her to suffer "anxiety, stress, anger, frustration, and mental anguish." *Id*. ¶ 50. She also claims that she then "used [her] funds … to pay the entire balance when [she] could have made a partial payment and used [her] funds on other necessary living expenses." *Id*. ¶ 104. But Plaintiff did not really pay the entire balance due by the Notice's deadline: she simply paid the amount that had been due on November 1, 2022. *See* Feezer Decl., Ex. D (Plaintiff's Excerpted Payment History).

Plaintiff asserts claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. and California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), Cal. Civ. Code § 1788, *et seq*., and for negligent misrepresentation under California law. As to all claims, she purports to represent a class of "[a]ll residential mortgagors whose mortgage servicing was transferred to PHH while in default and was not owned by PHH and to whom PHH sent a letter substantially similar or materially identical to the letter attached as [the Notice]." Am. Compl. ¶ 52.

## III. LEGAL STANDARD

PHH moves to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To

survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Instead, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Mere "legal conclusions," without factual support, must be disregarded. *Id.*

When considering a Rule 12(b)(6) motion to dismiss, a court may consider the contents of documents attached to or incorporated by reference in a complaint without converting the submission to a motion for summary judgment. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court need not accept conclusory allegations that are contradicted by the documents incorporated by reference to the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

## IV. ARGUMENT

All of Plaintiff's claims should be dismissed because all are based on the same flawed and legally unsupported reading of the Notice: that the Notice falsely threatened *immediate* acceleration and foreclosure should Plaintiff fail to cure her default by the stated deadline. In reality, the Notice simply uses pre-agreed language to fulfill an express contractual obligation in giving a notice of default. It cannot reasonably be read to threaten *immediate* acceleration or foreclosure. While the Notice identified acceleration and foreclosure as potential future consequences at an unspecified time should Plaintiff fail to cure her default, it did not state that either *would ever definitely* occur and did not put any timetable on *when* they could occur, if ever. It certainly did not threaten that acceleration or foreclosure was imminent. Instead, it simply recited the language that Plaintiff's Deed of Trust required in the event of Plaintiff's default. Accordingly, Plaintiff's claims should be dismissed.

**A. Plaintiff has not plausibly alleged an FDCPA claim.**

First, the Court should dismiss Plaintiff's FDCPA claims. Plaintiff contends that the Notice violated Sections 1692e(5), 1692e(10), and 1692f(6) of the FDCPA. Each alleged violation is based on the same alleged misconduct: the imagined false threat to immediately accelerate Plaintiff's indebtedness and foreclose upon her loan if she did not pay all past due amounts by the stated deadline. Am. Compl. ¶¶ 71–89. Because the Notice cannot reasonably be read as threatening immediate acceleration and foreclosure, all of Plaintiff's FDCPA claims should be dismissed.

***1. The Notice did not violate Section 1692e.***

Section 1692e of the FDCPA "prohibits the use of 'any false, deceptive or misleading representation or means in connection with the collection of any debt.'" *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014) (quoting 15 U.S.C. § 1692e). This provision includes a non-exhaustive list of sixteen prohibited practices. *See* 15 U.S.C. § 1692e. Plaintiff relies on two of Section 1692e's subsections: Section 1692e(5), which prohibits debt collectors from making a "threat to take any action that cannot legally be taken or that is not intended to be taken," and Section 1692e(10), which more generally prohibits any false representation or deceptive means to collect or attempt to collect a debt.

When a debt collector is accused of engaging in one of these practices, courts ask whether "the least sophisticated debtor" would likely be misled by the communication. *Tourgeman*, 755 F.3d at 1119. This inquiry is an objective one—courts cannot consider whether the plaintiff was actually misled, but rather whether a hypothetical, uninformed consumer would have been. *Id*. The "least sophisticated debtor" may be "uninformed, naïve, and gullible"; however, her interpretation of a collection notice "cannot be bizarre or unreasonable." *Id.*; *see Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993) ("[I]n crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness."); *Becker v. Genesis Fin. Servs.,* 2007 WL 4190473, at *7 (E.D.

Wash. Nov. 21, 2007). In addition, "[e]ven the 'least sophisticated consumer' standard presumes a debtor will consider a communication in its entirety and with some degree of care." *Hami v. Portfolio Recovery Assocs., LLC*, 2015 WL 897571, at *2 (C.D. Cal. Feb. 23, 2015).

*i. <u>Section 1692e(5)</u>*

Courts apply a two-prong test to evaluate a Section 1692e(5) claim, asking first whether the debt collector "threatened legal action or arrest," and second, whether the debt collector "could legally take such action and had the intent to do so." *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1077 (E.D. Cal. 2008); *see also Phillips v. Archstone Simi Valley LLC*, 2017 WL 11683752, at *4 (C.D. Cal. Jan. 31, 2017) (applying the two-prong test from *Schwarm* for a Section 1692e(5) claim). Plaintiff cannot satisfy even the first prong: the Notice was neither a threat to take action that cannot legally be taken nor a threat to take unintended action. It was not a threat at all.

To be sure, "an explicit statement or threat of legal action" is not required to establish a violation of Section 1692e(5), and "prospective language" can amount to a "clear threat" to the "least sophisticated debtor." *Quicho v. Mann Bracken, LLC*, 2007 WL 2782971, at *2 (N.D. Cal. Sept. 25, 2007). Nevertheless, for a collection letter to violate Section 1692e(5), it must clearly communicate that the purportedly threatened action is "not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made." *Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1136 (N.D. Ill. 1998); *see also Nichols v. Frederick J. Hanna & Assocs., PC*, 760 F. Supp. 2d 275, 279 (N.D.N.Y. 2011) ("The threatened legal action considered by § 1692e(5) must be 'authorized, likely, and imminent.'" (quoting *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993)). In addition, courts must not "myopically focus" on cherry-picked statements within a broader communication. *See Jones v. Synergetic Commc'n, Inc.*, 2018 WL 6062414, at *7 (S.D. Cal. Nov. 20, 2018). Instead, the language of the communication, "*taken as a*

*whole*," must leave the least sophisticated reader with the impression that "*some* type of legal action has already been or is about to be initiated and can be averted from running its course only by payment." *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 25 (2d Cir. 1989) (first emphasis added).

Plaintiff's gripe with the Notice is not that it warns of potential acceleration and foreclosure, which Plaintiff does not dispute PHH intended to and legally could carry out if her loan became at least 120 days delinquent (just 35 days past the Notice's deadline). *See* Am. Compl. ¶¶ 23, 33. Instead, Plaintiff complains that she believed the Notice threatened that these consequences were "***immediately***" on the horizon unless Plaintiff cured her default by the date specified. *Id*. ¶¶ 2, 29–30, 72–82 (emphasis added). But the Notice made no such threats. While it advised Plaintiff that the failure to cure her default by the date specified "***may*** result in acceleration" of her indebtedness and "the sale of the Property," *id.*, Ex. A at 2 (Doc. 16-1 at 5) (emphasis added), that is nothing more than the disclosure that Plaintiff's Deed of Trust *requires* before acceleration can occur. *See supra* at 4. Contrary to Plaintiff's allegations (*id*. ¶ 2), the Notice *does not* state that Plaintiff's indebtedness ***will be*** accelerated or her loan foreclosed upon, nor does it state ***when*** such an acceleration or foreclosure would occur, should PHH eventually choose to do so. Tellingly, while Plaintiff repeatedly calls the Notice a "Final Letter," that language is not used in the Notice: indeed, the word "final" is nowhere to be found. Nothing in the Notice insinuates that acceleration or foreclosure is "authorized, likely and imminent." *Nichols*, 760 F. Supp. 2d at 279.

Even in isolation, the Notice's conditional language does not constitute an imminent "threat" of legal action. *See, e.g.*, *Loomis v. Leading Edge Recovery Sol.'s, LLC*, 2011 WL 13227853, at *2 (C.D. Cal. Jan. 28, 2011) (conditional statements that the defendant was "authorized to recommend whether or not" the matter should be referred to an attorney "to determine whether legal action should be commenced" did not imply that the defendant "intend[ed] to take imminent legal action"); *Madura*

*v. Lakebridge Condominium Ass'n Inc.*, 382 F. App'x 862, 865 n.2 (11th Cir. 2010) (concluding that statement indicating that matter *may* be referred to attorney and lien filed if payment is not made was not a deceptive practice under the FDCPA); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 718 (S.D.N.Y. 2013) (there is no threat when the letter simply advises of options available and that the collector "may," as opposed to "will" pursue legal action); *Mccafferty v. Schwartzkopf Law Office*, 2011 WL 529967, at *5 (E.D. Mo. Feb. 8, 2011) (dismissing a claim under § 1692e(5) based on a letter that stated "[a] judgment *may* be taken against you unless your check or money order is received in our office in the amount set out above with in [sic] that thirty (30) day period").[3] Instead, it merely fulfills a contractual obligation to advise Plaintiff of potential outcomes that "may result" should she fail to cure her default.

That the challenged language was not the threat that Plaintiff alleges becomes all the more apparent when the Notice is "taken as a whole." *Pipiles*, 886 F.2d at 25. Rather than threatening imminent foreclosure, the Notice instead provides alternative options should Plaintiff be unable to remit the entire amount due. First, the Notice explains that even after acceleration, Plaintiff "has the right to reinstate the account" by paying all overdue amounts, as well as any fees and costs incurred in attempting to enforce the terms of the Note or Deed of Trust. Am. Compl., Ex. A at 2 (Doc. 16-1 at 5). In addition, the Notice advises Plaintiff that:

---

[3] *See also, e.g.*, *Madonna v. Academy Collection Serv., Inc.*, 1997 WL 530101, at *6–7 (D. Conn. Aug 12, 1997) (finding that the statement, "failure to comply may result in our informing our client that you have refused to cooperate, and they may pursue legal action," did not amount to a threat to pursue legal action); *Knowles v. Credit Bureau of Rochester*, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992) (finding that the statement, "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever"); *Avila v. Riexinger & Assocs., LLC*, 2015 WL 1731542, at *5 (E.D.N.Y. Apr. 14, 2015) (holding statements that a debt collector may consider additional remedies do not threaten imminent legal action and do not violate Section 1692e(5)), *aff'd in relevant part by* 644 F. App'x 19 (2d Cir. 2016).

> [i]f the mortgage account cannot be brought current, we should be contacted immediately to discuss possible alternatives to foreclosure. We want to help remedy the delinquent status of this account and would like to discuss alternatives that might be available. While our primary objective is the collection of past due amounts on the account, we want to work to find the best available alternative to bring the account current.

*Id*., Ex. A at 3 (Doc. 16-1 at 6). This language "further removes the [Notice] from any apparent immediate or imminent threat of legal action." *See Mikhael v. Credit Corp. Sol.'s Inc.*, 2021 WL 2434325, at *5 (E.D.N.Y. June 15, 2021) (referring to language "that if Plaintiff is 'unable to make the full payment'" … Plaintiff 'should contact [the defendant's] Pre-Legal Department'"). Given these disclosures, all against the backdrop of a Deed of Trust that calls for a notice of default with this very language, the least sophisticated consumer could not reasonably interpret the Notice as threatening immediate acceleration or foreclosure upon non-payment.

*Bang v. Pioneer Credit Recovery, Inc.*, 2020 WL 3213793 (C.D. Cal. Apr. 1, 2020), is instructive. There, the defendant sent a debt collection letter to the plaintiff that stated that the defendant would initiate "additional collection efforts" should plaintiff fail to cure his default, including "[e]valuating [the plaintiff's] eligibility for administrative wage garnishment." *Id*. at *1. In granting summary judgment against the plaintiff's FDCPA and Rosenthal Act claims, the Court concluded that the letter's reference to wage garnishment could not reasonably be interpreted as a "threat": "All that meant was that wage garnishment was a potential consequence of default. The statement was plainly not a specific evaluation of Plaintiff's individual circumstances. Not even the least sophisticated debtor could have read the Letter in such a way." *Id*. at *3. By the same token, not even the least sophisticated debtor could reasonably read the Notice "as a whole" and conclude that PHH planned to immediately accelerate Plaintiff's debt and foreclose upon her loan should Plaintiff fail to cure her default by the deadline.

Plaintiff likely intends to rely upon *Koepplinger v. Seterus, Inc.*, 2020 WL 2063416 (M.D.N.C. Apr. 29, 2020), *report and recommendation adopted at* 2020

WL 5705915 (M.D.N.C. Aug. 26, 2020), where the Middle District of North Carolina concluded that Seterus's notice of default, as a matter of law, constituted a false threat to immediately accelerate and foreclose upon the plaintiff's loan, when Seterus had no actual intention or legal ability to do so. *Id*. at *20–22. Seterus's letter, however, unlike the Notice at issue here, was explicitly identified as a "Final Letter." *Id.* at *8. In addition, the Seterus Final Letter expressly admonished borrowers that should they fail to cure their defaults by the stated deadline, Seterus "***will*** accelerate … the ENTIRE indebtedness of the loan," that such acceleration could take place as early as "45 days from the date of th[e] notice," and that "IF THE DEFAULT IS NOT CURED ON OR BEFORE THE EXPIRATION, WE AND THE LOAN OWNER INTEND TO ENFORCE THE LOAN OWNER'S RIGHTS AND REMEDIES AND MAY PROCEED WITHOUT FURTHER NOTICE TO COMMENCE FORECLOSURE PROCEEDINGS." *Id.* at *8. PHH's Notice, by contrast, stated none of those things. Rather, it provided that PHH ***may*** accelerate Plaintiff's indebtedness and foreclose on her loan if the default is not cured, did not state when such acceleration or foreclosure may occur, if ever, offered to work with Plaintiff should Plaintiff not be able to cure her default, and did not explicitly threaten to initiate foreclosure proceedings "WITHOUT FURTHER NOTICE."

In short, the foundational premise of Plaintiff's claims—that the Notice falsely threatened *immediate* acceleration and foreclosure should Plaintiff fail to cure her default by the deadline—is based on an unreasonable reading of cherry-picked statements and an unfounded conflation of PHH's Notice with a very different letter sent by a different servicer to other borrowers in another state. The Court should dismiss Plaintiff's claims under Section 1692e(5).

*ii. <u>Section 1692e(10)</u>*

For the same reasons, the Court also should dismiss Plaintiff's claims under Section 1692e(10), the FDCPA's "catchall" provision for allegedly misleading or deceptive conduct. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008).

Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect … any debt." 15 U.S.C. § 1692e(10). Plaintiff contends that the Notice constituted a "deceptive means to collect" her debt for the same reasons why she contends that the Notice constituted a false threat under Section 1692e(5): because the Notice threatened immediate acceleration or foreclosure when PHH had no intent or ability to do either. Am. Compl. ¶¶ 71–82. In other words, there is no daylight between the allegations supporting her claim under Section 1692e(5) and those supporting her claim under Section 1692e(10).

As explained above, even to the least sophisticated debtor, the Notice, which tracked verbatim the language required by Plaintiff's Deed of Trust, cannot reasonably be read to have threatened *immediate* acceleration and foreclosure upon non-payment. *See supra* at 8–12. Accordingly, just as the Notice does not violate Section 1692e(5), it also does not violate Section 1692e(10). *See Loomis*, 2011 WL 13227853, at *3–4 (concluding that claim under Section 1692e(10), based on the "same factual allegations purporting to establish deception or wrongdoing" in violation of Section 1692e(5), failed for the same reasons as the claim under Section 1692e(5)). Plaintiff's claims under that provision should be dismissed.

### 2. ***<u>The Notice did not violate Section 1692f.</u>***

Plaintiff also alleges that the same conduct violated Section 1692f of the FDCPA. Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA does not define "unfair" or "unconscionable," but Section 1692f provides eight examples of violative conduct "without limiting the general application" of the statute. *See* 15 U.S.C. § 1692f. Plaintiff specifically cites Section 1692f(6), which prohibits "threat[s] to take any nonjudicial action to effect dispossession … if (A) there is no present intention to take possession of the property." *Id.* § 1692f(6).

Plaintiff's claim under Section 1692f(6) fails as a matter of law for at least two reasons. As an initial matter, her Section 1692f(6) claim fails because it is

entirely "redundant" of her claims under Section 1692e. *Compare* Am. Compl. ¶¶ 71–82 (alleging factual bases for claims under Section 1692e) *with id.* ¶¶ 83–88 (same, for Section 1692f). It is well settled that a plaintiff cannot prevail on a claim under Section 1692f that is based upon conduct alleged to violate other provisions of the FDCPA. *See, e.g.*, *Lembach v. Bierman*, 528 F. App'x 297, 304 (4th Cir. 2013) ("Because the [plaintiffs] rely on conduct that is covered by § 1692e and do not allege any separate or distinct conduct to support a § 1692f violation, their claim fails."); *Velez v. Healthcare Revenue Recovery Grp., LLC*, 2017 WL 1476144, at *10 (M.D.N.C. Apr. 24, 2017) ("[C]ourts routinely dismiss § 1692f claims where the plaintiff does not allege any conduct in a § 1692f claim separate from the conduct that forms the basis of the § 1692e claims.").[4] This is true even where, as here, the Section 1692e claim fails as a matter of law. *Lembach*, 528 F. App'x at 302–04; *Johnson*, 867 F. Supp. 2d at 781–82.

In any event, Plaintiff's Section 1692f claim fails for the same reasons as her Section 1692e claims: that is, PHH has already shown that the Notice cannot reasonably be read to threaten an immediate acceleration and foreclosure of Plaintiff's loan, *see supra* at 8–12. By the same token, Plaintiff cannot credibly argue

---

[4] *Accord Turner v. Pro. Recovery Servs., Inc.*, 956 F. Supp. 2d 573, 581 (D.N.J. 2013) (dismissing at summary judgment stage claim under Section 1692f that was "redundant" of plaintiff's other FDCPA claims and "specifically addressed" by other provisions of the FDCPA); *Carman v. CBE Grp., Inc.*, 782 F. Supp. 2d 1223, 1234 (D. Kan. 2011) (considering Section 1692f claim and stating "[w]here [p]laintiff fails to allege conduct other than that asserted to violate another FDCPA provision, such 'will be deemed deficient under this provision" (quotation omitted)); *Davis v. Midland Credit Mgmt., Inc.*, 2016 WL 7117185, at *6 (D. Kan. Dec. 7, 2016) (dismissing Section 1692f claim where "Plaintiff fails to allege misconduct that goes beyond [defendant's] other alleged FDCPA violations"); *Miller v. Trident Asset Mgmt., LLC*, 2019 WL 4467036, at *7 (D. Md. Sept. 18, 2019) (granting summary judgment on Section 1692f claim because it was premised on same allegations as Section 1692e(10) claim); *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 781 (E.D.N.C. 2011) ("Congress enacted section 1692f to catch conduct not otherwise covered by the FDCPA.").

that the Notice threatened the imminent non-judicial sale of Plaintiff's property. The Notice did not violate Section 1692f(1), and Plaintiff's claim under that provision should be dismissed as well.

**B. <u>Plaintiff has not plausibly alleged a Rosenthal Act claim.</u>**

Plaintiff also contends that the same conduct underlying her FDCPA claims also constitutes a violation of the Rosenthal Act. She specifically cites Section 1788.17, the Rosenthal Act's "piggy-back" provision, which requires debt collectors to comply with the FDCPA, Cal. Civ. Code § 1788.17, and Section 1788.13(j), which, like Section 1692e(5) of the FDCPA, forbids any "false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made," Cal. Civ. Code § 1788.13(j).

Both of Plaintiff's Rosenthal Act claims should be dismissed. Because she fails to allege a violation of the FDCPA, Plaintiff likewise fails to state a claim for a violation of Section 1788.17 of the Rosenthal Act. *See Phillips*, 2016 WL 400100, at *8 ("[W]hether conduct 'violates the Rosenthal Act['s piggy-back provision] turns on whether it violates the FDCPA.'" (quoting *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012))); *Loomis*, 2011 WL 13227853, at *4. Likewise, because Plaintiff has not adequately alleged that PHH made any false threat in violation of Section 1692e(5) of the FDCPA, so too has she failed to allege a violation of Section 1788.13(j) of the Rosenthal Act. *See Loomis*, 2011 WL 13227853, at *4 ("As explained above, [defendant] did not falsely represent that a legal proceeding was imminent" for the purposes of the plaintiff's Section 1692e(5) claim. "Therefore, [the plaintiff] has not stated a claim for violation of [Section 1788.13(j)].").

**C. <u>Plaintiff has not plausibly alleged a negligent misrepresentation claim.</u>**

Finally, for similar reasons, Plaintiff has not plausibly alleged a negligent misrepresentation claim. Under California law, negligent misrepresentation "is a

form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." *Fox v. Pollack*, 181 Cal. App. 3d 954, 962 (Cal. Ct. App. 1986). While Plaintiff contends that the Notice falsely represented that PHH planned to immediately accelerate Plaintiff's indebtedness and foreclose on her loan, Plaintiff's interpretation is unreasonable and inconsistent with the text of the Notice. *See supra* at 8–12. As such, Plaintiff has failed to plausibly allege the first element of a negligent misrepresentation claim—"the misrepresentation of a past or existing material fact." And because Plaintiff's proffered interpretation of the Notice is unreasonable, and because she does not allege that she accepted the invitation of the Notice to discuss alternative options further with PHH, Plaintiff also has failed to allege the fourth element of negligent misrepresentation—justifiable reliance. Accordingly, her negligent misrepresentation claim must be dismissed.

## V. CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief contains 5,564 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 26, 2024

Respectfully Submitted,

BRADLEY ARANT BOULT CUMMINGS LLP

*/s/ Kimberly M. Ingram-Hogan*
Kimberly M. Ingram-Hogan (SBN 305497)
Bradley Arant Boult Cummings LLP
ONE 22 ONE
1221 Broadway, Ste 2400
Nashville, TN 37203
Phone: (615) 252-3592
kingram@bradley.com

*Attorney for Defendant PHH Mortgage Corp. d/b/a PHH Mortgage Services*