John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Counsel for Plaintiff and Proposed Class*
*Additional Counsel Listed on Signature Page*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| BEVERLY DANTZLER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendant. | Case Number: 2:23-cv-10562-MRA<br><br>**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: June 27, 2024<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS

**INTRODUCTION** ..... 1

**STATEMENT OF THE FACTS** ..... 4

**LEGAL STANDARD** ..... 5

**ARGUMENT** ..... 6

I. PHH's Exhibits in Support of its Motion to Dismiss Should Be Stricken ..... 6

II. Plaintiff Alleged an FDCPA Claim ..... 8

A. PHH's Final Letter violates FDCPA Section 1692e ..... 8

B. PHH's Arguments Regarding the Final Letter Are Misplaced ..... 12

C. Plaintiff states a 1692e(10) claim ..... 21

D. Plaintiff states a 1692f claim ..... 22

III. Plaintiff states a Rosenthal Act Claim. ..... 23

IV. Plaintiff states a Claim for Negligent Misrepresentation ..... 25

**CONCLUSION** ..... 25

**CERTIFICATE OF COMPLIANCE** ..... 27

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Seterus, Inc.*,
2019 WL 4735157 (E.D. Mich. Sept. 27, 2019) ..... 3

*Afewerki v. Anaya Law Grp.*,
868 F.3d 771 (9th Cir. 2017) ..... 10

*Albers v. Seterus, Inc.*,
No. 2:18-CV-02440-KHV-KGG (D. Kan. Jun. 19, 2019) ..... 3

*Bang v. Pioneer Credit Recovery, Inc.*,
18-CV-10579-CJC(EX), 2020 WL 3213793 (C.D.Cal. Apr. 1, 2020) ..... 19, 20

*Barilla v. Seterus, Inc.*,
2019 WL 6525945 (M.D. Fla. Dec. 4, 2019) ..... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007) ..... 5, 6

*Bernardo v. Davis Davis & Assocs. LLC*,
21-CV-2010-JGB-SHKX, 2022 WL 2101910 (C.D.Cal. Mar. 31, 2022) ..... 22

*Bostwick v. SN Servicing Corp.*,
21-CV-02560-LB, 2021 WL 4267492 (N.D.Cal. Sept. 20, 2021) ..... 17

*Castro v. Green Tree Servicing LLC*,
959 F. Supp. 2d 698 (S.D.N.Y. 2013) ..... 18

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..... 7

*Clark v. Cap. Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ..... 9, 22

*Erickson v. Pardus*,
551 U.S. 89 (2007) ..... 5

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ..... 10

*Fisher v. Seterus, Inc.*,
2019 WL 5865605 (D. Minn. Oct. 21, 2019) ..... 3

*Frison v. Accredited Home Lenders*,
No. 10-CV-777-JM, 2011 WL 1103468 (S.D. Cal. 2011) ....................................................24

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D.Cal. 2015) ....................................................................7, 8

*Gonzales v. Arrow Fin. Servs., LLC*,
660 F.3d 1055 (9th Cir.2011) ..................................................................................... *passim*

*Gonzalez v. Law Office of Allen Robert King*,
195 F. Supp. 3d 1118 (C.D.Cal. 2016) ..........................................................................9

*Haddad v. Midland Funding, LLC*,
255 F.Supp.3d 735 (N.D.Ill. 2017) ..............................................................................17

*Heinitz v. Seterus, Inc.*,
2019 WL 4805326 (N.D.N.Y. Sept. 30, 2019) ..................................................................3

*Hosseinzadeh v. M.R.S. Assocs., Inc.*,
387 F. Supp. 2d 1104 (C.D.Cal. 2005) ..........................................................................23

*Kaiser v. Cascade Cap., LLC*,
989 F.3d 1127 (9th Cir. 2021) ...................................................................................11

*Karr v. Med-1 Sols., LLC*,
2014 WL 1870928 (S.D.Ind. May 7, 2014) ....................................................................17

*Koepplinger v. Seterus, Inc.*,
2018 WL 4055268 (M.D.N.C. Aug. 24, 2018) ...........................................................3, 20

*Koepplinger v. Seterus, Inc.*,
2020 WL 2063416 (M.D.N.C. Apr. 29, 2020) ..................................................................20

*Leak v. Seterus, Inc.*,
2019 WL 11502793 (N.D. Ga. Nov. 13, 2019) ..................................................................3

*LeBlanc v. Unifund CCR Partners*,
601 F.3d 1185 (11th Cir. 2010) ..................................................................................16

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......................................................................................7

*Leszczynski v. Kitchen Cube LLC*,
8:23-CV-01698-MEM-FADS, 2024 WL 1829620 (C.D.Cal. Apr. 17, 2024) ......................7, 8

*Loomis v. Leading Edge Recovery Sols., LLC*,
10-CV-1614-JVS-AGRX, 2011 WL 13227853 (C.D.Cal. Jan. 28, 2011) ............................18

*Madura v. Lakebridge Condo. Ass'n Inc.*,
382 Fed. Appx. 862 (11th Cir. 2010)....................18

*Maronyan v. Fin. Credit Network Inc.*,
215-CV-02953-SVW-AGR, 2017 WL 57835 (C.D.Cal. Jan. 3, 2017)....................17

*Mccafferty v. Schwartzkopf Law Office*,
4:10-CV-1401-RWS, 2011 WL 529967 (E.D.Mo. Feb. 8, 2011)....................19

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*,
171 Cal. App. 4th 35, 89 Cal. Rptr. 3d 473 (2009)....................25

*Neitzke v. William*s,
490 U.S. 319 (1989)....................6

*Peebles v. Seterus, Inc.*,
2019 WL 4464126 (E.D.Cal. Sept. 18, 2019).................... *passim*

*Pollak v. Portfolio Recovery Assocs., LLC*,
285 F.Supp.3d 812 (D.N.J. 2018)....................18

*Riggs v. Prober & Raphael*,
681 F.3d 1097 (9th Cir. 2012)....................23

*Ruth v. Triumph P'ships*,
577 F.3d 790 (7th Cir. 2009)....................15

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)....................6

*Schwarm v. Craighead*,
552 F.Supp.2d 1056 (E.D.Ca. 2008)....................18

*Spehr v. Seterus, Inc.*,
No. 4:18-CV-01922-RLW (E.D. Mo. Sept. 6, 2019)....................3

*Swanson v. Southern Oregon Credit Serv., Inc.*,
869 F.2d 1222 (9th Cir. 1988)....................13

*Tourgeman v. Collins Fin. Servs., Inc.*,
755 F.3d 1109 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014)....................10, 12

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003)....................7, 8

*Warner v. Midland Credit Mgmt., Inc.*,
540 F. Supp. 3d 946 (C.D.Cal. 2021) ....................9, 10

*Wenger v. Seterus*,
2019 WL 2119980 (M.D. Pa. May 15, 2019) ....................4

*Williams v. Seterus, Inc.*,
2020 WL 362874 (N.D. Ala. Jan. 22, 2020) ....................4

**Statutes**

15 U.S.C. § 1692 ....................9

United States Code Title 15 § 1692k ....................23

Cal. Civ. Code § 1788.10(e) ....................24

Cal. Civ. Code § 1788.17 ....................23

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ....................1

FDCPA .................... *passim*

FDCPA § 1692e ....................8, 12, 16, 23

FDCPA § 1692e(5) ....................13, 17, 18

FDCPA § 1692e(10) ....................21, 22

FDCPA §§ 1692e and 1692f ....................22

Real Estate Settlement Procedures Act ....................11

Rosenthal Act .................... *passim*

Rosenthal Act. The Rosenthal Act ....................23

Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*. ....................1

**Court Rules**

Fed. R. Evid. 201 ....................7

Federal Rule of Civil Procedure 8(a)(2) ....................5

Rule 8 ....................6

Rule 12(b)(6) ....................5, 6

**Other Authorities**

12 C.F.R. § 1024.41(f)(1) ....................15

12 C.F.R. § 1024.41(f)(1)(i)....................11, 13, 19, 21

53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988)....................17

Statement of General Policy or Interpretation: Staff Commentary ....................17

## INTRODUCTION

This is a consumer protection action brought by Plaintiff Beverly Dantzler ("Dantzler" or "Plaintiff"), and others similarly situated under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq*. arising from PHH Mortgage Services' ("PHH" or "Defendant") systematic use of unlawful and unfair debt collection practices when collecting residential consumer mortgage loans. During the relevant time period, PHH sends borrowers form letters alleging their borrowers are in default of their mortgages and that the failure to immediately make a full and complete payment of all arrearages may result in acceleration of their loan and sale of their home (hereinafter referred to as the "Final Letter")[1].

PHH's Motion is straightforward with a nearly identical argument asserted as to each of Plaintiff's claims. PHH contends the Final Letter is nothing more than a "run of the mill notice of default letter" or "a routine communication." [DE 19, p. 1]. PHH suggests the Final Letter "cannot reasonably be read to have threatened immediate acceleration and foreclosure." *Id*.

But the Final Letter is clear and explicit in claiming that PHH has options available to it: that "failure to cure the default on or before the date specified in the

[1] Throughout its memorandum, PHH refers to the Final Letter as "the Notice".

notice may result in acceleration of the sums secured by the security instrument and sale of the property." The Final Letter suggests PHH *can* accelerate and proceed to sell the property if the borrower fails to cure the default on or before the date specified. However, as alleged in Plaintiff's First Amended Complaint and discussed herein, PHH ***cannot*** and ***will not*** accelerate and/or foreclose on a consumer's property until, at a minimum, Plaintiff and similarly situated class members' mortgages are more than 120 days delinquent.

And while PHH notes that portions of the Final Letter technically comply with certain notice requirements in the Deed of Trust—that issue is unrelated to Plaintiff's claims. The problem with the Final Letter is that the deadline "specified in the notice" by which a payment "must be received" under threat of potential acceleration and foreclosure is <u>completely</u> illusory. This false deadline misrepresents PHH's rights and intentions and would cause the least sophisticated consumer to believe he/she is at risk of acceleration and foreclosure if he/she does not pay the amount demanded by that deadline. Simply put, PHH is legally prohibited from following through with the threats in its Final Letters. These allegations are sufficient for asserting an FDCPA violation, a violation of the Rosenthal Act, and negligent misrepresentation under California law.

Numerous cases around the country have confirmed that nearly identical letters give rise to valid claims where debt collectors cannot and do not accelerate

and foreclose upon loans in the manner threatened. *See Peebles v. Seterus, Inc.*, 2019 WL 4464126, at *1 (E.D.Cal. Sept. 18, 2019) (finding Seterus' nearly identical letters gave rise to an FDCPA claim because Seterus did not accelerate loans in the manner threatened by its letters); *Adams v. Seterus, Inc.*, 2019 WL 4735157, at *4 (E.D. Mich. Sept. 27, 2019) (finding an FDCPA violation where "the Michigan Final Letter threatens foreclosure proceedings that Defendant would not pursue if Plaintiff paid less than the amount demanded in the Michigan Final Letter."); *Albers v. Seterus, Inc.*, No. 2:18-CV-02440-KHV-KGG (D. Kan. Jun. 19, 2019); *Fisher v. Seterus, Inc.*, 2019 WL 5865605, at *5 (D. Minn. Oct. 21, 2019), *report and recommendation adopted*, 2019 WL 5865449 (D. Minn. Nov. 8, 2019) (finding an FDCPA violation where "the Complaint plausibly alleges that the Letter contained a material misrepresentation, [and] that the Letter communicated to an unsophisticated consumer that Seterus intended to do something it did not intend to do, namely accelerate the loan if a full payment was not made by the expiration date"); *Heinitz v. Seterus, Inc.*, 2019 WL 4805326, at *5 (N.D.N.Y. Sept. 30, 2019) (same); *Leak v. Seterus, Inc.*, 2019 WL 11502793, at *7 (N.D. Ga. Nov. 13, 2019), *report and recommendation adopted in part, rejected in part*, 2020 WL 7406792 (N.D. Ga. Jan. 29, 2020) (same); *Koepplinger v. Seterus, Inc.*, 2018 WL 4055268, at *5 (M.D.N.C. Aug. 24, 2018) (same); *Barilla v. Seterus, Inc.*, 2019 WL 6525945, at *3 (M.D. Fla. Dec. 4, 2019) (same); *Spehr v. Seterus, Inc.*, No. 4:18-CV-01922-

RLW (E.D. Mo. Sept. 6, 2019) (same); *Wenger v. Seterus*, 2019 WL 2119980, at *1(M.D. Pa. May 15, 2019) (same); *Williams v. Seterus, Inc.*, 2020 WL 362874, at *2 (N.D. Ala. Jan. 22, 2020) (same).

The same conclusion is applicable here—PHH's Final Letters misrepresent PHH's rights and threaten actions that PHH cannot legally take. Thus, PHH's Motion should be denied.

## STATEMENT OF THE FACTS

When consumers are approximately 45 days past due, PHH sends a form letter characterized as a Final Letter. *First Amended Complaint* ("FAC") [DE 16, ¶¶ 3, 22-23]; *see also* FAC Ex. A [DE 16-1]. All Final Letters contain, *inter alia*:

1. Notice that the loan is in default;
2. Notice the consumer must pay all amounts allegedly due;
3. Identification of a specific "default amount" past due that is subject to increase;
4. Identification of a thirty-five day deadline by which the consumer must meet to "cure [their] default" (the "Deadline"); and
5. Failure to cure the default on or before the Deadline:
    a. "may result in acceleration of the sums secured by the Security Instrument and sale of the Property";
    b. Upon acceleration, the total obligation will be immediately due and payable without further demand. [DE 16-1]; *see also* FAC ¶¶ 26-28.

PHH's threat of acceleration and sale of the property in foreclosure, unless full payment is received by the Deadline is false. PHH *never* accelerates or

forecloses if a consumer brings the loan less than 120 days past due.[2] FAC ¶¶ 22-23, 29-31, 33. Moreover, federal law does not permit PHH to foreclose within the timeframe threatened in the Final Letters. FAC ¶¶ 22-23. However, the Final Letters cause consumers to believe they may lose their homes if all amounts are not paid by the Deadline. FAC ¶ 38. The Final Letters are specifically designed to mislead and scare consumers into making additional payments when PHH neither has the intention nor the legal right to accelerate or foreclose as threatened. FAC ¶¶ 22-23, 39-44.

## <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (internal citations omitted). On a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

---

[2] For example, a loan due on January 1 would be sent a Final Letter around February 14 (45 days past due) with a March 17 deadline requiring a borrower to "cure their default." *Any payment* prior to March 17 sufficient to cover the January payment would leave the loan no more than 45 days past due on March 17 (because the loan would be 45 days past due for the February payment). *No payment* would leave the loan only 80 days past due. Thus, a borrower must fail to pay *anything* for the remainder of March and all of April before PHH's threats become viable, and any payment sufficient to cover January would subtract 30 days from the number of days past due.

(internal citations omitted). In *Twombly*, the U.S. Supreme Court further defined the pleading requirements and instructed that a complaint must include "enough factual matter (taken as true) to suggest" that the plaintiff will be able to meet the required element of the given legal claim. 550 U.S. at 556.

To survive a motion to dismiss, a complaint is adequate if it identifies enough "facts that are suggestive enough to render the [legal elements] plausible." *Id*. Rule 8 does not "impose a probability requirement at the pleading stage," but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id*.; *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a complaint may proceed even if it appears "that a recovery is very remote and unlikely"). "[A] complaint should not be dismissed for failure to state a claim unless it appears doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 548.

## ARGUMENT

### I. PHH's Exhibits in Support of its Motion to Dismiss Should Be Stricken

PHH's Declaration of Gina Feezer, Plaintiff's Note (Exhibit A), Plaintiff's Notice of Service Transfer (Exhibit C), and Plaintiff's payment history (Exhibit D) and arguments concerning the same, should be stricken from consideration. [DE 19,

19-1, 19-2, 19-4, 19-5].[3] Generally, on a motion to dismiss the Court cannot consider matters outside the pleadings without converting it into one for summary judgment. *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1060 (N.D. Cal. 2012). There are two exceptions: incorporation by reference and judicial notice. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1021 (C.D.Cal. 2015) (Courts decline to consider declarations that "constitute evidence not referenced in the complaint or not a proper subject of judicial notice."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("[a]ffidavits and declarations … are not allowed as pleading exhibits…."). Documents attached to a motion to dismiss "may only be considered if: '(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document.'" *Leszczynski v. Kitchen Cube LLC*, 8:23-CV-01698-MEM-FADS, 2024 WL 1829620, at *3 (C.D.Cal. Apr. 17, 2024) (citation omitted). Otherwise, "[u]nder Fed. R. Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted).

The Declaration of Gina Feezer, Plaintiff's Note , Plaintiff's Notice of Service Transfer, and Plaintiff's payment history should be stricken and not considered

[3] Plaintiff does not object to the Deed of Trust because it is publicly filed.

because they are matters not referenced by the pleadings, are not central to Plaintiff's claims, the documents have not been authenticated, and are neither properly incorporated by reference or the subject of judicial notice. *Ritchie*, 342 F.3d at 908; *Leszczynski, supra*. Ms. Feezer's Declaration makes several statements about when Ocwen became the servicer of Plaintiff's Note, when Ocwen transferred servicing rights to PHH, that Ocwen ceased to exist as a separate entity from PHH, and Plaintiff's payment history with PHH.[4] These statements and the related exhibits are irrelevant to Plaintiff's claims, and Plaintiff never refers to these documents or this history in her complaint. Plaintiff's Note is not publicly filed, so the Court may not take judicial notice of it (*Gerritsen*, 112 F. Supp. 3d at 1021) and is only referenced tangentially where the Final Letter references “amounts under the Note….” FAC ¶¶ 86-88, 94-96. Accordingly, PHH's Declaration of Gina Feezer, Plaintiff's Note, the Transfer Letter and Plaintiff's payment history should be stricken.

## II. Plaintiff Alleged an FDCPA Claim

### A. PHH’s Final Letter violates FDCPA Section 1692e

PHH claims the Final Letter does not violate the FDCPA because it “uses pre-agreed language to fulfill an express contractual obligation in giving a notice of default” and simply comports with “the requirements of Plaintiff’s Deed of Trust.”

[4] PHH only mentions these documents in its memorandum in passing ([DE 19, pp.9,11]) and Plaintiff is unclear why PHH included them.

[DE 19, p.12]. This argument is a red-herring that conflates compliance with a contractual provision in the Deed of Trust with the real issue—whether the Final Letter contains false, deceptive, or misleading misrepresentations in violation of the FDCPA. The FDCPA was created to protect consumers from unfair and deceptive debt collection practices. *See* 15 U.S.C. § 1692. An FDCPA claim requires three threshold requirements: "(1) the plaintiff must be a 'consumer'; (2) the defendant must be a 'debt collector'; and (3) the defendant must have committed some act or omission in violation of the FDCPA." *Gonzalez v. Law Office of Allen Robert King*, 195 F. Supp. 3d 1118, 1126 (C.D.Cal. 2016) (citing *Robinson v. Managed Accts. Receivables Corp.*, 654 F.Supp.2d 1051, 1058 (C.D.Cal.2009). An intentional violation is not required, as the FDCPA "is a strict liability statute." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir.2011); *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006).

FDCPA claims are subject to "an objective analysis that takes into account whether 'the least sophisticated debtor would likely be misled by a communication.'" *Gonzalez*, 195 F. Supp. 3d at 1126 (quoting *Guerrero v. RJM Acquisitions LLC,* 499 F.3d 926, 934 (9th Cir.2007)). "[T]he least sophisticated debtor is reasonable and functional but lacks experience and education regarding financial matters." *Warner v. Midland Credit Mgmt., Inc.*, 540 F. Supp. 3d 946, 960 (C.D.Cal. 2021) (quoting *Stimpson v. Midland Credit Mgmt., Inc.*, 944 F.3d 1190,

1196 (9th Cir. 2019). "Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012). "In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014), *as amended on denial of reh'g and reh'g en banc* (Oct. 31, 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010)). A materially false representation is one that "cause[s] the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017) (citation omitted). "A literally true statement can still be misleading." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011). Generally, whether a defendant has violated the FDCPA is a question of fact to be resolved by the jury." *Warner*, 540 F. Supp. 3d at 957 (quoting *Voris v. Resurgent Cap. Servs., L.P.*, 494 F. Supp. 2d 1156, 1163 (S.D.Cal. 2007)).

The first two elements of Plaintiff's FDCPA claim are not in dispute. Rather, PHH tries skirting the importance of the Final Letter by claiming it is required by the Deed of Trust to use certain language in its Final Letters. This position is

insincere and untrue. There is no requirement for PHH to lie about the *actual* deadlines so consumers are misled into believing that acceleration and foreclosure are on the table. PHH's statements are deceptive to the least sophisticated consumer, and the Final Letters describe an impossible outcome because PHH is legally prohibited from foreclosing until a buyer is at least 121 days delinquent, and never accelerates before then. FAC ¶¶ 22-23, 29-31, 33. The *real* deadline for a borrower to cure a default or face acceleration/foreclosure is, at a minimum, 120 days; not 85 days delinquent as threatened by PHH. See e.g., 12 C.F.R. § 1024.41(f)(1)(i). As a result, consumers are materially misled about what amount needs to paid, and when those amounts must be paid, to avoid having their loan accelerated and home foreclosed upon. FAC ¶¶ 34, 50, 79.

Further, PHH contends that the CA Final Letter is an "imagined false threat…" and therefore does not violate any provision of the FDCPA. [DE 19, p.13]. This is not true. PHH ***cannot,*** according to its subservicing agreement with Fannie May and with the Real Estate Settlement Procedures Act, accelerate Plaintiff's or *any* consumers' loan prior to 120 days of delinquency. FAC ¶¶ 18, 21, 22; 12 C.F.R. § 1024.41(f)(1)(i). While a debt collector may attempt to persuade a debtor to make a payment that is lawfully owed, a debt collector cannot threaten action that it plainly cannot take. *See Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1134 (9th Cir. 2021) ("if a debt collector's letter falsely represents, even by implication, that a debt is

legally enforceable, it violates the FDCPA”). Accordingly, Plaintiff has asserted a valid FDCPA claim against PHH.

**B. PHH's Arguments Regarding the Final Letter Are Misplaced**

PHH also attempts to minimize the impact of the Final Letters by citing to other portions of the letter that purportedly “provide[] alternative options should Plaintiff be unable to remit the entire amount due” by the false deadline. [DE 19, p. 10]. However, rather than helping PHH, this additional language further highlights the way in which the "least sophisticated debtor" would be misled by PHH's threat. *Tourgeman*, 755 F.3d at 1119. This inquiry is objective—"courts cannot consider whether the plaintiff was *actually* misled, but rather, whether a hypothetical uninformed consumer would have been.” *Peebles*, 2019 WL 4464126, at *3 (citing *Tourgeman*, 755 F.3d at 1119) (emphasis in original). Unless the least sophisticated debtor paid all amounts due or somehow made “alternative arrangements” with PHH before the deadline, he/she would believe he/she was at risk of acceleration and foreclosure--because that is precisely what the Final Letter says.

Again, “[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.” 15 U.S.C. § 1692e. PHH first claims the Final Letter’s “conditional language” does not constitute an “imminent” threat of legal action, but instead “merely fulfills a contractual obligation to advise [of] potential outcomes.” Essentially, because PHH could

*eventually* accelerate the debt and initiate foreclosure if Plaintiff failed to cure her default, PHH claims the letters are truthful and do not run afoul of the FDCPA. [DE 19, p.11]. FDCPA § 1692e(5) prohibits the debt collector from "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added). This provision is not limited to "legal action or arrest," nor implicates a threatened lawsuit, as suggested by PHH. [DE 19, p.14]. Section 1692e(5) "plainly covers "threats to take any action"; not simply civil or criminal enforcement action." *Peebles*, 2019 WL 4464126, at *3; *Swanson v. Southern Oregon Credit Serv., Inc*., 869 F.2d 1222, 1226 (9th Cir. 1988) ("[The] issue is simply whether or not [the debt collector] *intended* to take the action threatened.") (quoting *Jeter v. Credit Bureau, Inc*., 760 F.2d 1168, 1175 (11th Cir. 1985)) (emphasis in original). Federal law does not allow PHH to accelerate or foreclose on Plaintiff's loans prior to 120 days of delinquency. FAC ¶¶ 22-23; 12 C.F.R. § 1024.41(f)(1)(i). Because PHH conforms its policies to comply with federal law it cannot have taken or intended to have taken the actions it threatens prior to 120 days. *Id*.

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011) is instructive here. In *Gonzales*, a debt buyer sent consumers letters suggesting that a failure to pay "may be submitted to a credit reporting agency." *Id*. At 1060. However, the debt buyer "could not legally report the debt to any credit bureau." *Id*.

The debt buyer, like PHH, argued that the statement was conditional because it used the terms “may” and “if.” But the Ninth Circuit performed an analysis equally applicable here by stating:

> To the least sophisticated debtor, the phrase "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled" suggests two possibilities. It suggests the possibility that Arrow was not reporting the debt to a credit reporting agency, and would accordingly make no further report in the event of settlement. But the phrase also suggests that, under some set of circumstances applicable to the recipient, Arrow could and would report the account Absent any possibility that Arrow *could* report the accounts, there would be no reason for Arrow to assert its intention to make a positive report in the event of payment. Only the first reading is actually correct, but the second reading is far from "bizarre" or "idiosyncratic" — it is eminently reasonable. As there is no circumstance under which Arrow could legally report an obsolete debt to a credit bureau, the implication that Arrow could make a positive report in the event of payment is misleading.

*Id.* at 1062-1063.

Though PHH's Final Letters may not state “immediate” acceleration/foreclosure, the Final Letters establish a 35-day payment deadline leaving Plaintiff and the least sophisticated debtors with the *impression* they are subject to acceleration or foreclosure *immediately* after the expiration of that period. Based upon the plain language of PHH's Final Letter, there is no other way to read these statements. FAC Ex. A [DE 16-1]. In this instance, the word *may* within the phrase “may result in acceleration of the sums secured by the security instrument

and sale of the property" clearly suggests that PHH *can* accelerate and sell the borrower's home if the borrower fails to make full payment by the deadline, but *may* benevolently elect not to do so. Absent any possibility that PHH *could* accelerate and foreclose upon a failure to meet the deadline in the letter, there would be no reason for PHH to provide it as a potential action.

As with *Gonzales,* Plaintiff alleged that the least sophisticated debtor would infer two possibilities from the Final Letter should the debtor fail to bring the amount fully current on or before the date specified: (1) PHH could, at its option, elect to accelerate and foreclose immediately or; (2) PHH could wait and foreclose later, again at its option.

The first of these two interpretations is an <u>impossibility</u>. PHH *cannot* accelerate and foreclose immediately based upon a failure to meet the deadline in the Final Letter. The Final Letter describes an impossible outcome because PHH is legally prohibited from foreclosing until a borrower is *at least* 121 days delinquent, and PHH never accelerates the loan before that date. FAC ¶¶ 21-23, 30-31, 33; *See e.g.,* 12 C.F.R. § 1024.41(f)(1); *see also Ruth v. Triumph P'ships*, 577 F.3d 790, 801–02 (7th Cir. 2009) ("To threaten to take some action to the extent permitted by law, however, is to imply that, under some set of circumstances and to some extent, the law actually permits that action to be taken"). "When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will

take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril." *Gonzales* at 1063 (internal citations omitted). For these reasons alone, PHH's motion should be denied.

In addition, *Gonzales* is but one in an exceptionally long-line of cases holding that the conditional "may" language or other technically-true-but-misleading representations that are inconsistent with a debt collector's actual intent or legal rights violate the FDCPA. In *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1196 (11th Cir. 2010) the Eleventh Circuit analyzed the phrase "*[i]f* we are unable to resolve this issue within 35 days we *may* refer this matter to an attorney in your area for legal consideration" and found that:

> Unifund mistakenly relies on the use of conditional language such as 'if' and 'may' in an effort to safeguard the letter from being construed as 'threatening.' Despite the conditional language, a reasonable juror could read the dunning letter as intimating that a lawsuit will follow immediately after the end of the 35 day 'grace' period… supports a reasonable inference that Unifund is threatening LeBlanc with legal action, that it is Unifund's intent to deprive LeBlanc of his personal property.

Similar to *LeBlanc* and *Gonzales*, another analogous case is *Brown v. Card Serv. Ctr.* in which the defendant collection agency wrote that, unless a consumer made arrangement to pay within five days, the matter "could" result in referral to an attorney and "could" result in a lawsuit. 464 F.3d at 451-52. The Third Circuit held the plaintiff stated an FDCPA § 1692e claim since the defendant asserted "that it

could take an action that it had no intention of taking and has never or very rarely taken before." *Id*. at 455. *Brown* is one in a long-line of cases and FTC commentaries on the FDCPA[5] holding that similar half-truths, technically-true-but-misleading representations, and other threats that are inconsistent with a debt collector's actual intent or legal rights violate the FDCPA.[6] Thus, Plaintiff has met her burden to allege PHH's conduct violates the FDCPA.[7]

---

[5] The Federal Trade Commission Commentary to FDCPA § 1692e(5):

> A debt collector may not state or imply that he or any third party *may* take any action unless such action is legal and there is a reasonable likelihood, at the time the statement is made, that such action will be taken [and] if the debt collector has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading.

Statement of General Policy or Interpretation: Staff Commentary on the FDCPA, 53 Fed.Reg. 50097-02, 50106 (Dec. 13, 1988) (emphasis added).

[6] Moreover, just because the Deed of Trust allegedly entitled the borrower to a notice following the borrower's breach "prior to acceleration," it does not give PHH the right to misrepresent the timing, and how much must be paid to avoid acceleration and foreclosure. *Bostwick v. SN Servicing Corp.*, 21-CV-02560-LB, 2021 WL 4267492, at *2 (N.D.Cal. Sept. 20, 2021) ("allegations of communications that misrepresented an amount due sufficiently plead a violation under the FDCPA and the Rosenthal Act."); *Maronyan v. Fin. Credit Network Inc.*, 215-CV-02953-SVW-AGR, 2017 WL 57835, at *5 (C.D.Cal. Jan. 3, 2017) (denying motion to dismiss based on material misrepresentations of the amount due). On this basis, PHH's Motion should be denied.

[7] This is consistently confirmed by district courts across the country. *Haddad v. Midland Funding, LLC*, 255 F.Supp.3d 735, 740 (N.D.Ill. 2017) (same re: defendant's statement that "[i]f this account goes to an attorney, our flexible options *may* no longer be available to you") (emphasis added); *Karr v. Med-1 Sols., LLC*, 2014 WL 1870928, at *5 (S.D.Ind. May 7, 2014) (same re: a letter referencing

PHH offers numerous irrelevant cases for the proposition that conditional language does not constitute an immediate threat sufficient to violate the FDCPA. [DE 19, pp.15-16]. These cases are immaterial because they do not refer to any action that could not legally be taken or an action the defendant had no plans of pursuing as alleged by Plaintiff. *See Loomis v. Leading Edge Recovery Sols., LLC*, 10-CV-1614-JVS-AGRX, 2011 WL 13227853, at *2 (C.D.Cal. Jan. 28, 2011) (explaining no FDCPA violation when the defendant "Leading Edge can *recommend* whether FIA should contact their attorneys, who would in turn determine whether FIA should commence legal action in the matter.") (emphasis in original); *Madura v. Lakebridge Condo. Ass'n Inc.*, 382 Fed. Appx. 862, 865 n.2 (11th Cir. 2010) ("indicating that a matter may be referred to an attorney and a lien filed if payment is not made is not a deceptive practice…; nor was it threatening to advise that Lakebridge had the ability to collect reasonable attorney's fees incurred in the course of filing a lien.") (citation omitted); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 718 (S.D.N.Y. 2013) ("outlining the possible available options to

---

"possible" legal action and that defendant "could" take plaintiff to court); *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F.Supp.3d 812, 830 (D.N.J. 2018) (holding "a judgment *may* ultimately be obtained and your local attorney *may* take any action that is legally available" supported a reasonable inference of a threat under § 1692e(5) (emphasis added)); *Schwarm v. Craighead*, 552 F.Supp.2d 1056, 1077 (E.D.Ca. 2008) ("[U]se of the words 'may' or 'possible,' does not negate the existence of a threat if a letter, in its entirety, could lead the least sophisticated debtor to believe the legal action is a real possibility.") (internal citations omitted).

avoid foreclosure does the Notice indicate that Green Tree *may* pursue legal action if the matter is not resolved by a certain date" does not constitute a "threat" to take an action that cannot legally be taken."); *Mccafferty v. Schwartzkopf Law Office*, 4:10-CV-1401-RWS, 2011 WL 529967, at *5 (E.D.Mo. Feb. 8, 2011) (dismissing 1692e(5) claim because "an unsophisticated consumer would be able to distinguish the difference between a statement that something *is capable of occurring* in the future from a statement that something *is certain to occur* in the future."). As alleged and will be shown through discovery, PHH does not have any right to accelerate and foreclose until after the 120-day deadline and the thirty-five day deadline is a false threat to take action PHH cannot legally take and is misleading to the unsophisticated consumer. FAC ¶¶ 22-23, 29-31, 33; 12 C.F.R. § 1024.41(f)(1)(i).

PHH claims that *Bang v. Pioneer Credit Recovery, Inc.*, 18-CV-10579-CJC(EX), 2020 WL 3213793, at *3 (C.D.Cal. Apr. 1, 2020) supports the proposition that a letter's reference to wage garnishment was not a threat but merely a potential consequence. [DE 19, p. 17]. *Bang* is distinguishable both procedurally and factually. First, *Bang* is a summary judgment order, not a ruling on a motion to dismiss. Second, nothing in *Bang* suggests Pioneer Credit Recovery's threat of garnishment was a false statement or a statement in conflict with any policy or procedure regarding debt collection. What Pioneer may or may not do is not inconsistent with any action it takes in the normal course of business. That is not the

case here; PHH does not intend to take any action threatened in the Final Letter and cannot legally take the action threatened in the Final Letter. *See e.g.,* FAC ¶¶ 39-40 ("[t]he Final Letters misrepresent PHH's intentions…; PHH has neither the present intent, nor the present ability, to undertake such actions.").

PHH then tepidly tries distinguishing *Koepplinger v. Seterus, Inc.*, 2020 WL 2063416 (M.D.N.C. Apr. 29, 2020), *report and recommendation adopted* at 2020 WL 5705915 (M.D.N.C. Aug. 26, 2020). [DE 19, pp.17-18]. Generally, the only difference in the cases is the use of the language "will" versus "may". Except, as in *Bang*, *supra*, PHH wishes to cite to the summary judgment opinion, as opposed to the order denying the motion to dismiss. On the motion to dismiss, in *Koepplinger*, Seterus argued—as PHH does—its letters did not threaten immediate acceleration and foreclosure. *Koepplinger*, 2018 WL 4055268 at *1 (M.D.N.C. Aug. 24, 2018), *report and recommendation adopted*, 2018 WL 4401738 (M.D.N.C. Sep. 14, 2018). The Court rejected Seterus' argument:

> the [Letter] falsely informs debtors that, on pain of acceleration and foreclosure, they must pay the entire specified default amount by the Expiration Date, when, in reality, to forestall acceleration and foreclosure under [Seterus'] corporate policy, they need only pay enough of the default amount … to bring their loans less than 45 days past due by the Expiration Date. Accepting these allegations as true, [the plaintiffs] plausibly allege violation of [the FDCPA, § 1692e].

*Id.* at *6.

As discussed herein, PHH's Final Letters describe an outcome that is impossible because PHH is legally prohibited from foreclosing until a buyer is at least 121 days delinquent, and never accelerates before then. FAC ¶¶ 22-23, 29-31, 33. The deadline for a borrower to cure the default or face acceleration/foreclosure is 120 days; not 85 days delinquent as threatened by PHH. 12 C.F.R. § 1024.41(f)(1)(i). As a result, Plaintiff and the putative class members are materially misled about what amount needs to paid, and when those amounts must be paid, to avoid having their loan accelerated and home foreclosed upon. FAC ¶¶ 50, 79.

**C. Plaintiff states a 1692e(10) claim**

Section 1692e(10) prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt." PHH likewise moves to dismiss Plaintiff's 1692e(10) claim for the same reasons as Plaintiff's 1692e(5) claim, in that "even to the least sophisticated debtor, the Notice, which tracked verbatim the language required by Plaintiff's Deed of Trust, cannot reasonably be read to have threatened immediate acceleration and foreclosure upon non-payment." [DE 19, pp.18-19]. PHH has no authority to accelerate and foreclose before 120 days. Because PHH may accelerate and foreclose under certain circumstances, this does not mean that PHH can threaten consumers with false information regarding when, and under what conditions, PHH will accelerate and foreclose. A Section 1692e(10) claim need not show that a debt collector never accelerates or foreclosed on a

defaulted loan, but rather that "the California Final Letter's threat to immediately accelerate a loan absent payment of the full default amount if false because [a debt collector] would not always accelerate a loan under those circumstances." *Peebles*, 2019 WL 4464126, at *4. As discussed *supra*, PHH's acceleration policy in practice differs from the acceleration practice prescribed in its Final Letters. For all the same reasons discussed above, Plaintiff states a claim under FDCPA § 1692e(10).

**D. Plaintiff states a 1692f claim.**

PHH argues that Plaintiff's 1692f claim fails because it is "redundant" and secondarily because "the Notice cannot reasonably be read to threaten an immediate acceleration and foreclosure of Plaintiff's loan." [DE 19, pp.19-20]. To be sure, allegations can give rise to more than one violation of the FDCPA. *Clark*, 460 F.3d at 1177 ("Although we have never squarely addressed the issue of overlapping liability under the FDCPA, our prior cases leave us convinced that one action can give rise to multiple violations of the Act."); *Bernardo v. Davis Davis & Assocs. LLC*, 21-CV-2010-JGB-SHKX, 2022 WL 2101910, at *4 (C.D.Cal. Mar. 31, 2022) (holding Plaintiff alleged violations of both FDCPA §§ 1692e and 1692f). Except the issue over multiple FDCPA violations is best addressed "during the calculation of damages." *Id*. at 1178. PHH's unlawful conduct violates both § 1692e and § 1692f because it is unfair and unconscionable in addition to being deceptive or misleading. FAC ¶¶ 83-88.

Even if identical conduct cannot constitute a violation of both statutory provisions, Plaintiff's Section 1692f claims should not be dismissed until there is an affirmative ruling on Plaintiff's 1692e claims. Accordingly, Plaintiff's claims under § 1692f should not be dismissed for the same reasons as the § 1692e claims set forth herein.

## III. Plaintiff states a Rosenthal Act Claim.

In no uncertain terms, Plaintiff's claims rest on the same conduct alleged that violates the FDCPA. PHH contends Plaintiff has not plausibly alleged a violation of the FDCPA and for that reason, has not alleged a violation of the Rosenthal Act. The Rosenthal Act incorporates the FDCPA through Cal. Civ. Code § 1788.17, which states, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ. Code § 1788.17. "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). A defendant that violates the FDCPA, violates the Rosenthal Act. *Hosseinzadeh v. M.R.S. Assocs., Inc.*, 387 F. Supp. 2d 1104, 1118 (C.D.Cal. 2005). PHH's Final Letters convey false and misleading information about both the timing and the amount of money that must be paid to avoid acceleration and potential

foreclosure which frustrates the unsophisticated consumer's ability to intelligently choose their response. FAC ¶¶ 2-3, 34, 37-39.

In *Frison v. Accredited Home Lenders*, No. 10-CV-777-JM, 2011 WL 1103468 (S.D. Cal. 2011), a plaintiff's suit arose from a loan obtained through refinancing of her home and the subsequent foreclosure proceeding initiated against it. The *Frison* plaintiff alleged the lending company had neither the authority to legally foreclose upon her property, nor did it intend to actually do so, in violation of Cal. Civ. Code § 1788.10(e). Siding with the plaintiff, the Court denied a motion to dismiss stating that the plaintiff had met the minimal standards for pleading a Rosenthal Act claim. *Id*. at *7-8. Citing § 1788.10(e), the order emphasized that if the debt collector threatens to sell the property, a claim under the Rosenthal Act can be made "unless such action is in fact contemplated by the debt collector and permitted by the law." *Id*. Because the plaintiff had alleged that the lender did not have the legal authority to foreclose and did not intend to do so, the Rosenthal Act claim was valid. *Id*. Similarly, in *Peebles*, the court held that the debt collector's lack of legal authority to foreclose and lack of intention to do so led the court to find a violation of the Rosenthal Act. *Peebles*, 2019 WL 4464126, at *6.

Like *Frison* and *Peebles*, PHH did not have the authority permitted under the law to legally foreclose without prior notice to the debtor. FAC ¶¶ 22-23, 29-31, 33. Further, Plaintiff has asserted adequate facts to demonstrate that PHH had a pattern

and practice of not accelerating its loans as described in its Final Letters, *id*., and therefore, Plaintiff's Section 1788.10e claim is valid. Finally, as discussed at length *supra*, Plaintiff asserted a valid FDCPA claim and thus has a valid Rosenthal Act claim.

**IV. Plaintiff states a Claim for Negligent Misrepresentation**

A claim for negligent misrepresentation requires "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50, 89 Cal. Rptr. 3d 473, 483 (2009) (citation omitted). PHH's Final Letters convey false and misleading information about both the timing and the amount of money that must be paid to avoid acceleration and potential foreclosure. FAC ¶¶ 2-3, 34, 37-39. Plaintiff relied on PHH's misrepresentations to her detriment, making a mortgage payment when she could have used the money for other things. FAC ¶¶ 42, 44, 104. Thus, these allegations should be sufficient for Plaintiff to allege she has been damaged as a result of PHH's misrepresentations.

**<u>CONCLUSION</u>**

For the foregoing reasons, PHH's Motion to Dismiss should be denied.

Respectfully submitted, this the 29th day of May, 2024.

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

s/ *John J. Nelson*
John J. Nelson (SBN 317598)
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

Scott C. Harris (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: sharris@milberg.com

Edward H. Maginnis (*pro hac vice*)
N.C. State Bar No. 39317
**MAGINNIS HOWARD**
7706 Six Forks Road
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@carolinalaw.com

*Counsel for Plaintiff and Proposed Class*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certified that this brief contains 6,442 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 29, 2024

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

s/ *John J. Nelson*
John J. Nelson (SBN 317598)
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Counsel for Plaintiff and Proposed Class*